UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS J. MCCOY,

      Plaintiff                                Civil Action No. 09-11897

v.

                                       District Judge Marianne O. Battani
                                       Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Thomas J. McCoy brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Supplement Security Income under the Social Security Act. Both parties have filed motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On April 27, 2005, Plaintiff applied for Supplemental Security Income ("SSI") alleging a disability onset date of December 7, 2002 (Tr. 206-208). After the initial denial of the claim, he requested an administrative hearing, held before Administrative Law Judge

("ALJ") Ethel Revels in Detroit, Michigan on January 15, 2008 (Tr. 217). Plaintiff, represented non-attorney Karl E. Brown, testified (Tr. 223-254), as did Vocational Expert ("VE") Lois Brooks (Tr. 254-259). On January 25, 2008, ALJ Revels found Plaintiff not disabled (Tr. 21). On March 12, 2009, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on May 18, 2009.

## **BACKGROUND FACTS**

Plaintiff, born May 2, 1967, was 40 when ALJ Revels issued her decision (Tr. 21, 206). He completed 11th grade and worked previously as a meat packer and a stocker (Tr. 77). He alleges disability as a result of right hip problems, hearing loss, ankle surgery, right hand fractures, learning disabilities, and dislocated discs of the neck and back (Tr. 76).

### **A. Plaintiff's Testimony**

Plaintiff testified that his past relevant work included jobs as a short order cook, setting molds for manhole covers, and performing assembly work for a steel company, adding that he worked his way up from sweeping floors to the assembly job (Tr. 223-224). Plaintiff reported that the assembly job did not require lifting more than five pounds (Tr. 227). Plaintiff also reported temporary work running a machine that manufactured rear windshield wiper components (Tr. 228). In addition, Plaintiff testified that he worked as a kitchen helper and meat packer (Tr. 231).

Plaintiff indicated that during his school years, he experienced both concentrational and cognitive problems (Tr. 232). He alleged that he currently experienced nightmares, anxiety, mood swings, and anger management problems (Tr. 233). He reported that he had

been unable to work since a December, 2002 car accident resulting in an inability to stand for extended periods and pinched nerves in his lumbar spine (Tr. 233). Plaintiff also reported intense headaches three to four times each week (Tr. 234). He indicated that he coped with headache and back pain by taking Motrin and applying an ice pack to his neck (Tr. 235).

Plaintiff testified that he was hospitalized for psychiatric problems after slashing his wrists as a teenager (Tr. 236). He also reported that as an adult, he had himself committed after trying to overdose on pills (Tr. 237). He reiterated however that the alleged disability was the result of injuries sustained in the December, 2002 car accident (Tr. 237). He stated that he required frequent position changes as a result of back, leg, and neck discomfort (Tr. 238). Noting that he was trying to limit his intake of Motrin and Vicodin, Plaintiff reported that his condition obliged him to recline for three to four hours most days (Tr. 238-240).

Plaintiff denied performing household chores (Tr. 240). Acknowledging a history of drinking problems, he denied *current* alcohol or drug use (Tr. 240-241). He reported that he had given up trying to launder his own clothes and relied on his son to grocery shop for him (Tr. 241-242). Noting that he spent most of his waking hours watching television or listening to CDs, Plaintiff testified that he occasionally read a newspaper (Tr. 242). He alleged sleep disturbances and mood swings, attributing these conditions to a bipolar disorder (Tr. 244). Admitting that he had worked for many years while on psychotropic medication, Plaintiff noted that his recent attempts to wean himself from the medication had led to behavioral problems (Tr. 244).

Plaintiff estimated that he could sit for a maximum of 20 minutes, stand for 45, and

walk for half a block (Tr. 245).  He testified that as a result of his fear of falling, he had requested a cane from his physician several months earlier (Tr. 247).  He alleged writing problems as a result of a right hand fracture occurring sometime between 1992 and 1996 (Tr. 248).  Plaintiff reported that a pinched nerve in his neck precluded climbing (Tr. 253).

### B.  Medical Records

### 1.  Treating Sources

Emergency room notes show that Plaintiff reported chest pain and anxiety in April, 2002 (Tr. 116).  In December, 2002, Plaintiff sought emergency treatment after a car accident (Tr. 105-112).  Imaging studies show a Grade II spondylolisthesis at L5 and S1 but no evidence of a fracture (Tr. 110).  Medical records from January, 2004 show that Plaintiff sustained a concussion but a CT scan of the head was normal (Tr. 139, 145).  Imaging studies of the cervical spine showed mild spondylosis (Tr. 132).  Plaintiff denied back pain (Tr. 127).  November, 2004 mental health treating notes indicate a history of a bipolar disorder (Tr. 146, 149).  Plaintiff exhibited normal speech and appearance with an anxious affect (Tr. 148).  He was assigned a GAF of 50 to 55[1] (Tr. 149).

In May, 2007, Wook Kim, M.D. treated Plaintiff at the request of a treating physician (Tr. 196).  Dr. Kim, observing that a recent MRI of the back was normal, found "pain and tenderness in the lower lumbar paraspinal muscles" (Tr. 196).  Dr. Kim administered a

---

[1]

GAF scores of 51-60 indicate moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

cervical facet joint nerve block without complications (Tr. 197). Nerve conduction studies of the lower extremities showed radiculopathy at L5 and S1 right, but "no evidence of lumbar [r]adiculopathy or peripheral polyneuropathy" (Tr. 202). Upper extremity studies showed radiculopathy at C6 left but the absence of cervical radiculopathy, peripheral polyneuropathy, Carpal Tunnel Syndrome ("CTS") or ulnar neuropathy (Tr. 203). Dr. Kim administered a lumbar facet joint nerve block in June and July, 2007 (Tr. 199-200). In July, 2007, he renewed Plaintiff's prescription for Vicodin (Tr. 199).

In January, 2008, Dr. Kim found that Plaintiff was limited to lifting 10 pounds, sitting for four hours a day and standing for two with a preclusion on walking (Tr. 204). He precluded all climbing, stooping crouching, pushing/pulling, but found that Plaintiff could balance, bend, crawl, reach, and handle on an occasional basis (Tr. 204). He opined that Plaintiff was unable to perform any full-time work (Tr. 204).

## 2. Consultive and Non-examining Sources

In July, 2005, Thomas S. Rosenbaum, Ph.D. performed a consultive psychological examination at the request of Plaintiff's attorney (Tr. 151). Dr. Rosenbaum remarked that Plaintiff had not worked since the December 7, 2002 car accident, noting that Plaintiff alleged exertional limitations as a result of a pinched nerve (Tr. 151). Acknowledging a history of mood swings, depression, and panic attack from the age of 16, Dr. Rosenbaum noted that Plaintiff attended regular classes until dropping out of school after 11th grade (Tr. 151, 153). He remarked that Plaintiff had been receiving psychiatric treatment since September, 2004 (Tr. 152). Plaintiff exhibited normal conversation skills, normal self-

esteem and appropriate hygiene (Tr. 154-155). He denied suicidal ideation, but admitted that he was depressed that he was unable to work (Tr. 155-156). Intelligent tests indicated that Plaintiff's functioning was borderline normal or slow (Tr. 157). Noting Plaintiff's allegations of back and neck problems as well as borderline intellectual functioning, Dr. Rosenbaum assigned Plaintiff a GAF of 45[2] (Tr. 159). In an accompanying "Mental Capacities Evaluation," Dr. Rosenbaum deemed Plaintiff moderately to severely impaired in all areas of psychological functioning (Tr. 161-162).

A Psychiatric Review Technique performed the following month on behalf of the SSA found the presence of a bipolar disorder and anxiety (Tr. 167, 170, 172). Under the "B Criteria," Plaintiff was deemed moderately limited in activities of daily living and maintaining concentration, persistence, and pace but no episodes of decompensation (Tr. 177-178). A Mental Residual Functional Capacity Assessment completed by the same individual found that Plaintiff's work-related mental limitations consisted of a moderately impaired ability to "understand and remember detailed instructions," concentrate for extended periods, and "respond appropriately changes in the work setting" (Tr. 163-164). The Assessment concluded that Plaintiff could "do simple work on [a] sustained basis with [adequate] pace and [endurance]" (Tr. 165).

In October, 2005, Ashok Gupta performed a consultive medical examination of

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR* ) (4th ed.2000).

Plaintiff (Tr. 181). Dr. Gupta found that Plaintiff's level of discomfort as a result of his physical condition was moderate to severe with weakness and fatigue causing moderate difficulty (Tr. 182). He found that Plaintiff was limited to sitting for five hours a day and standing or walking for four with no more than five pounds lifting (Tr. 184). In the dominant hand, Plaintiff was capable of simple grasping for six hours a day; pushing/pulling for four; fine manipulations, three; and above shoulder reaching, four (Tr. 184-185). Dr. Gupta found that aside from a half hour lunch, Plaintiff required one 10-minute rest period (Tr. 185).

The same month, a Physical Residual Functional Capacity Assessment found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 189). Plaintiff was limited to occasional climbing, stooping, kneeling, crouching, and crawling and frequent (as opposed to *constant* ) balancing (Tr. 190). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations, concluding that Plaintiff was capable of performing exertionally light work[3] (Tr. 189-191).

### C.    VE Testimony

---

[3]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

VE Lois Brooks classified Plaintiff's past relevant work as a machine feeder as unskilled at the light exertional level; kitchen helper, unskilled/light to medium; and short order clerk, semiskilled/light(Tr. 254-255).

The ALJ then posed the following question, taking into account Plaintiff's age, education level, and work experience:

> "Assume . . . that our hypothetical claimant needs additional limitations for a sit/stand option, one that will not require sitting more than 30 minutes at a time, standing more than 30 minutes at a time and walking a half a block. However our hypothetical claimant can walk and stand six out of eight hours, lift ten pounds frequently, and 20 pounds occasionally. That work however, must be simple repetitive type tasks because there are moderate limitations in the ability to maintain concentration for extended periods due to pain as well as moderate limitations in the ability to carry out detailed instructions due to the depression and there is also a learning disability. The work must not require reading and calculation. . . . No more than minimum reading and calculations. That work also [must] not involve any climbing or scaffolds, ropes or ladders. No frequent climbing of stairs and ramps. The work must not involve frequent bending. If you assume that, what jobs, if any, would our hypothetical claimant be vocationally qualified to perform?"

(Tr. 256).

VE testified that given the above limitations, the individual could perform work assembling (4,200 positions in the region of southeastern Michigan), "inspecting sorting" (3,000), and packaging (2,500) (Tr. 256). The VE testified that if the hypothetical individual was obliged to use a cane, the job numbers would be unchanged (Tr. 257). However, if the individual was unable to grip repetitively with the dominant hand, all of the above jobs would be precluded (Tr. 257). The VE stated that his findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 258).

In response to questioning by Plaintiff's attorney, the VE testified that if the individual was also encumbered by the need to rest for two hours a day and the inability to stand, sit, or walk for more than six hours at a time, all full-time work would be precluded (Tr. 258-259).

### D. The ALJ's Decision

ALJ Revels found that although Plaintiff's conditions of "a back disorder, a neck disorder, bipolar disorder, learning disorder, anxiety disorder, and polysubstance dependence - in remission" were severe impairments under 20 C.F.R. § 404.1520(c), none of the conditions met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14-15).

The ALJ determined that although Plaintiff was unable to perform his past relevant work, he retained the following residual functional capacity ("RFC"):

> "[T]o perform work that allows a sit/stand option that does not require sitting more than 30 minutes or standing more than 35 minutes at a time; stand or walk for six of eight hours in an eight-hour workday; lift 10- pounds frequently and 20 pounds occasionally; perform simple, routine, repetitive tasks due to moderate limitations in the ability to maintain concentration because of pain and moderate limitations in the ability to understand, remember, and carry out detailed instructions because of depression and learning disorder; perform work that requires no more than minimal reading and calculations; perform no climbing of scaffolds, ropes, or ladders and no frequent climbing of stairs or ramps; perform no work at hazardous heights or around dangerous machinery; perform no frequent bending; and perform work that allows use of a cane"

(Tr. 16).

The ALJ found that Plaintiff was unable to perform his past relevant work but was capable of performing a significant number of other jobs, citing the VE's job findings *supra* (Tr. 20-21).

The ALJ found Plaintiff's claims "not entirely credible," noting that his hand fracture did not prevent him from later working as a short-order cook (Tr. 18). She observed that although Plaintiff alleged that he needed a cane, he had only fallen on four or five occasions since December, 2002 (Tr. 19). The ALJ cited January, 2004 emergency treatment records indicating that Plaintiff denied back pain (Tr. 19). She noted that Plaintiff's exclusively non-surgical treatment stood at odds with his claim of disability (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884

F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Analyses of Treating and Examining Sources

### 1. Dr. Kim

Plaintiff contends that the ALJ erred in discounting Dr. Kim's disability opinion. *Plaintiff's Brief* at 10-16, *Docket #10.* He disputes the ALJ's finding that Dr. Kim's opinion was not well supported by objective medical evidence, citing the treating physician's clinical

observations.  *Id.* at 12.

"If uncontradicted, the [treating] physicians' opinions are entitled to complete deference." *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991).  "[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004));20 C.F.R. § 404.1527(d)(2)).  Further,

> "[i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

*Wilson,* at 544.  However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings.  *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004).

Contrary to Plaintiff's claim, the ALJ complied with the procedural and substantive requirements of *Wilson* in rejecting Dr. Kim's opinion of disability.  The ALJ, noting that the treating relationship began in May, 2007, observed that Dr. Kim saw Plaintiff on three occasions only in May through July, 2007 before making his January, 2008 disability

pronouncement (Tr. 19). The ALJ permissibly noted that "lumbar and cervical spine x-rays, the EMG studies, and a lumbar spine MRI," did not support the conclusion that Plaintiff was capable of less than sedentary work (Tr. 20).

Specifically, Plaintiff faults ALJ for overlooking an MRI showing a grade 2 spondylolisthesis and Dr. Kim's clinical observations which would support the disability opinion. *Plaintiff's Brief* at 13. This argument fails for several reasons. First, Plaintiff's diagnosis of grade 2 spondylolisthesis (as opposed to grades 3 or 4) is not synonymous with disability. Grade 2 patients are generally treated with conservative measures and can return to normal activities once they have "good core strength."[4] Second, the ALJ noted that Plaintiff had received only conservative (non-surgical) treatment since the December, 2002 car accident and admitted that prescribed pain killers relieved his back discomfort (Tr. 19). Third, the ALJ pointed out that the October, 2005 Residual Functional Capacity Assessment, standing at odds with Dr. Kim's disability opinion, was better supported by objective medical evidence. There was no error in the ALJ's rejection of Dr. Kim's January, 2008 assessment.

## 2. Dr. Gupta

Plaintiff concedes the ALJ's finding that Dr. Gupta was a one-time examining source rather than a treating source. *Plaintiff's Brief* at 12-13. Nonetheless, he argues that the ALJ impermissibly rejected Dr. Gupta's opinion on the basis that it was placed below the letterhead of Plaintiff's former attorney, contending that this was an insufficient basis to

---

[4]http://www.sportsinjuryclinic.net/cybertherapist/back/lowback/spondylolisthesis.h
tm;http://backandneck.about.com/od/conditions/p/spondylolisthes.htm.

discount the opinion.  *Id.* at 12.

Because Dr. Gupta performed only a one-time consultive examination, "the treating physician doctrine simply does not apply here."*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  As such, Dr. Gupta's findings were "entitled to no special degree of deference." *Id.* (*citing Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir.1989)).  Moreover, I disagree with Plaintiff's contention that the ALJ summarily rejected the opinion solely on the basis that the physician had been hired for the purpose of bolstering the disability claim.  The ALJ  noted that the examining physician's opinion was not supported by objective medical evidence or Plaintiff's history of conservative treatment (Tr. 19).  Although in rejecting Dr. Gupta's findings, the ALJ did not delve into the level of detail allotted to Dr. Kim, she noted on the same page that 1) Plaintiff admitted that medication relieved his back and neck pain 2) January, 2004 emergency treatment notes state that he denied back pain 3) he sought treatment on a sporadic basis only (Tr. 19).   The ALJ noted elsewhere in the opinion that objective testing, including CT scans, EMG studies, and MRI studies did not  support the conclusion that Plaintiff was disabled (Tr. 18).

### 3.  Dr. Rosenbaum

Plaintiff also faults the ALJ for rejecting Dr. Rosenbaum's findings of borderline intelligence. *Plaintiff's Brief* at 13-14.  Contrary to Plaintiff's contention, the ALJ adequately supported her reasons for rejecting Dr. Rosenbaum's opinion with record evidence.  She noted that Plaintiff appeared "healthy, well-groomed, alert, and cooperative" at a November, 2004

psychological examination (Tr. 18). She acted within her discretion in rejecting Dr. Rosenbaum's GAF of 45, noting elsewhere in the opinion that Plaintiff's relatively static history of emotional and cognitive problems had not prevented him from performing semiskilled and unskilled work for many years before the December, 2002 car accident (Tr. 19). Indeed, Dr. Rosenbaum noted that Plaintiff exhibited normal conversation skills, normal self-esteem and appropriate hygiene (Tr. 154-155). Dr. Rosenbaum's finding that Plaintiff was moderately to severely impaired in *all* areas of psychological functioning stands at odds with his own examination notes as well as the record as a whole. As such, the ALJ did not err in discounting his opinion (Tr. 161-162).

### B. The Credibility Determination

The ALJ's reasons for rejecting Drs. Kim, Gupta, and Rosenbaum's assessments also support her determination that Plaintiff claims were not fully credible (Tr. 18). Contrary to Plaintiff's assertion that the ALJ did not comply with the requirements of SSR 96-7p, her findings concerning claims of both physical and mental abilities are well supported by substantial evidence.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See also Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that

whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." C.F.R. §404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment received for relief of symptoms, and additional considerations relevant to functional limitations. 20 C.F.R. § 404.1529(c)(3).

The ALJ noted that claims of manipulative impairments because of an old hand fracture stood at odds with Plaintiff's post-fracture ability to work as a short-order cook flipping omelettes (Tr. 18). She cited Plaintiff's testimony that medications eliminated his pain (Tr. 18). She noted that x-rays showing a grade 2 spondylolisthesis, discussed above, showed no fractures or herniations (Tr. 18). The ALJ observed that in January, 2004, Plaintiff denied back pain and in fact, imaging studies showed "only mild spondylosis" (Tr. 18). Acknowledging nerve conduction studies showing left C6 radiculopathy and right L5 and S1 neuropathy, but "no evidence" of CTS, peripheral neuropathy, or ulnar neuropathy, the ALJ remarked that Dr. Kim deemed a lumbar spine MRI "normal" (Tr. 18). Although Plaintiff testified that he needed a cane to prevent falling, the she noted that he reported only four or five falls since December, 2002 (Tr. 19).

Plaintiff criticizes the ALJ for citing his marijuana and alcohol use, contending that it was not a proper basis for rejecting his claims. First, this observation was one of many

factors that the ALJ used to discount Plaintiff's credibility. Moreover, she was entitled to note that the November, 2004 statement admitting to current alcohol and drug use stood at odds with Plaintiff's testimony (Tr. 240-241). Second, as noted above, Plaintiff's ability to work despite a long-term mental condition before December, 2002 undermines his current claim that his psychological problems preclude all work (Tr. 19). Because there is no support for the argument that the ALJ performed an inadequate credibility analysis or applied the wrong legal standard, the deference generally accorded the administrative credibility finding is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *Richardson, supra,* 402 U.S. at 401, 1427. As such, the ALJ's credibility determination, consistent with the rest of non-disability decision, should not be disturbed.

### C. The VE's Testimony

Finally, Plaintiff contends that the ALJ failed to meet her Step Five burden that Plaintiff could perform a substantial number of jobs in the national economy. *Plaintiff's Brief* at 19-21(*citing Teverbaugh v. Commissioner of Social Security,* 258 F. Supp. 2d 702, 705-706 (E.D. Mich. 2003). He argues that the VE's failure to provide DOT codes for her job findings invalidates the ALJ's non-disability conclusion. *Id.* at 19-20. He also contends that because he was unrepresented by counsel, ALJ had an affirmative duty to develop the record. *Id.* at 20-21 (*citing Lashley v. Secretary of HHS,* 708 F.2d 1048 (6th Cir. 1983).

*Varley v. HHS,* 820 F.2d 777, 779 (6th Cir. 1987), sets forth the Sixth Circuit's

requirements for a VE's testimony. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Id*. at 779 (internal citations omitted); *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). The hypothetical question must be supported by record evidence.

First, Plaintiff's argument that the ALJ did not include all of the limitations found by his treating and consultive physicians is defeated by substantial evidence contradicting Drs. Kim, Gupta, and Rosenbaum's findings. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)).

Second, Plaintiff faults the ALJ for omitting limitations on stooping, kneeling, crouching, and crawling from the hypothetical question. *Plaintiff's Brief* at 15. However, the Physical Residual Functional Capacity Assessment did not *preclude* these functions, but merely stated that Plaintiff would be limited to performing stooping, kneeling, crouching, and crawling one-third of the time or less (occasionally) (Tr. 190). Plaintiff makes no attempt to show how the work as an assembler, inspector/sorter, or packager required more than occasional stooping, kneeling, crouching, and crawling (Tr. 256). Defendant, citing SSR 85-15, notes that so long as the "individual can stoop and crouch occasionally, the base of

sedentary and light jobs "'is virtually intact.'" *Defendant's Brief* at 18, *Docket #18.* Consistent with SSR 85-15, the VE, noting that the job findings would not be altered if Plaintiff were required to use a cane, found that "[t]he jobs that I identified really require very little ambulating. It was mostly sitting or standing" (Tr. 257). These jobs, involving "mostly sitting or standing," would certainly not require stooping, kneeling, crouching, or crawling for more than one third of the workday. As such, even if the omission of greater postural limitations constitutes error, it would be at most harmless error insufficient to justify a remand.

Third, Plaintiff's argument that the VE was required to provide DOT codes for her job findings is similarly meritless. In compliance with SSR 00-4p, the VE testified specifically that her job findings were consistent with the DOT (Tr. 258). "The absence of specific DOT code numbers does not undermine the substantial evidence supporting the ALJ's decision." *Patterson v. Commissioner of Social Sec.,* 2010 WL 774678, at *3 (W.D.Mich. 2010); *see also Pefley v. Astrue* 2010 WL 1002613, at *11 (E.D.Mich.2010)(Borman, J.)(the ALJ need not elicit DOT job codes from the VE to comply with SSR 00-4p).

Fourth, Plaintiff takes issue with the VE's testimony that he could perform "inspecting sorting" work, noting that the one sorter/inspector position in the DOT (#589.387.010) is semi-skilled and thus unavailable to him. *Plaintiff's Brief* at 20. However, I note that the VE did *not* state that Plaintiff could perform the specific position of "sorter/inspector," but instead that he could do "inspecting and sorting" work (Tr. 256). Plaintiff acknowledges that the

DOT contains 137 subclassifications for sorter and approximately 932 subclasses of inspector. *Id.* As such, the testimony is more obviously interpreted to state that Plaintiff could perform a reduced range number of either the sorter or inspector positions. Plaintiff notes that many of the assembler, packer, inspector, and sorting positions listed in the DOT are either semi-skilled, skilled, or are exertionally medium. *Plaintiff's Brief* at 20. By the same token, he does not claim that none of the inspector or sorter positions are unskilled and either sedentary or light. The VE's testimony was elicited for the purposes of finding the number of jobs in existence given the hypothetical limitations. "The function of the VE is to advise the ALJ of jobs found among various categories of employment which the claimant can perform with h[is] limitations. The ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor h[is] finding to an 'individual's particular residual functional capacity.'" *Beinlich v. Commissioner,* No. 08-4500, 2009 WL 2877930, at *4 (6th Cir. Sept.9, 2009) (*citing Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir.2003)).

Fifth, Plaintiff contends that the sit/stand option included in the hypothetical question automatically precludes exertionally light work. *Plaintiff's Brief* at 14-15. He relies on SSR 83-12 which states that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." 1983 WL 31253 at *4. However, as noted by Defendant, Plaintiff ignores the Regulation's following sentence indicating that "[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base." 1983 WL 31253 at *4. This is exactly what ALJ

Revels did.

Finally, Plaintiff, citing *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051(6th Cir. 1983), argues that the ALJ had a heightened duty to develop the record in light of the fact that he was not represented by an attorney at the hearing. *Plaintiff's Brief* at 20. Indeed, "where the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care and assume a more active role" in the proceedings. *Id.; Smith v. Harris,* 644 F.2d 985, 989 (3d Cir.1981). However, "the mere fact that a claimant is unrepresented is not grounds for reversal." *Born v. Secretary of Health & Human Services* 923 F.2d 1168, 1172 (6th Cir. 1990), (*citing Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 856 (6th Cir.1986)).

Plaintiff makes his "failure to develop the record" argument to support his contention that the ALJ's Step Five findings were not supported by substantial evidence. However, his arguments that (1) he is incapable of all exertionally light work (2) the ALJ was obliged to elicit DOT job numbers from the VE (3) the jobs cited by the VE do not include unskilled work, have been discussed and rejected. The ALJ questioned Plaintiff at length and in great detail regarding his daily activities, work history, and treatment for both his mental and physical conditions. Moreover, while Plaintiff was not represented by an attorney at the hearing, a non-attorney representative vigorously questioned both Plaintiff and the VE (Tr. 223-236, 258-259). Because the record has been sufficiently developed by the representative and the ALJ, remand on this issue is not appropriate.

In closing I note that this Court's recommendation that the administrative opinion be upheld is not intended to trivialize Plaintiff's conditions, particularly as to what appear to be long-term psychological impairments. While the transcript shows some degree of limitation, a review of this record as a whole indicates that the ALJ's determination that he was capable of returning to full-time work is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level. *Mullen v. Bowen, supra.*

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's Motion for Summary Judgment GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: April 12, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 12, 2010.


s/Susan Jefferson
Case Manager